**STATE, Plaintiff, v. KEARNS, Defendant.**

Common Pleas Court, Franklin County.

No. 35,102.   Decided April 5, 1955.

## OPINION

By BARTLETT, J.

THE DEMURRER TO THE INDICTMENT IS OVERRULED; AND THE DEFENDANT IS DIRECTED TO ENTER HIS PLEA THERETO FORTHWITH.

The indictment charges that about March 6, 1953, the defendant as Prosecuting Attorney, within this county, elected to said office of public trust, did unlawfully and fraudulently embezzle and convert to his own use money belonging to said county in the sum of $210.00, without the assent of said county, which money had come into his possession and care, by virtue and under color of his said office, and while he was discharging and pretending to discharge the duties of said office, contrary to §12876 GC.

At the request of counsel for the defendant, a bill of particulars was filed as a supplement to the indictment stating that on or about the aforesaid date said Frank H. Kearns, while acting in his official capacity as such Prosecuting Attorney aforesaid, did issue an order to the auditor of said county for public funds for expenses to be incurred by him in the performance of his official duties and in the furtherance of justice as provided by law, upon which order said auditor drew his warrant on the Treasurer of said county, payable to said Frank H. Kearns as Prosecuting Attorney, and by said means did come into the possession of said money belonging to said county, by virtue and under color of his said office; and did then deposit said warrant in the Ohio National Bank of Columbus, Ohio, under his name and the title of his office, in a special checking account under his control, for expenses to be incurred in the performance of his official duties and in the furtherance of justice as aforesaid; and that on or about March 6, 1953, while acting and pretending to act as said Prosecuting Attorney, did falsely and fraudulently draw a check against said fund deposited in said bank payable to himself and did receive personally the sum of $210.00 on said check, based on a voucher wherein

he certified falsely and fraudulently that said check and money was a refund for expenses incurred in his official capacity, in attending a meeting of the National Association of Prosecuting Attorneys in New Orleans, Louisiana, from February 26, 1953, to March 1, 1953, when in fact he well knew that he had not attended said meeting and did not incur said expenses, and well knew said certificate aforesaid was false and fraudulent and was made solely to unlawfully and fraudulently deprive said county of said money, and did thereby unlawfully, intentionally and fraudulently receive said money solely for his own personal use, gain and profit, and did thereby unlawfully and fraudulently embezzle and convert to his own use said money in the manner aforesaid contrary to the statute in such cases made and provided.

A demurrer has been filed to the indictment, supplemented by the bill of particulars, on the ground that the facts so stated do not constitute an offense punishable by the laws of Ohio.

It is argued by counsel for the defendant that it is for the Prosecuting Attorney alone to judge the necessity of the expenditure of such funds in the performance of his official duties and in the furtherance of justice; and if in the opinion of the prosecutor any expenditure from those funds is for said purposes, it is almost impossible for anyone to say as a matter of law that such expenditures are illegal.

In fact it is further argued that no one has any authority to question the judgment of the Prosecuting Attorney in the use of said funds, since said funds may often be used in secret investigations about which it is proper that no one else have any information other than the Prosecutor and his assistants. Certain opinions of different Attorney Generals are cited in support of these views. It must be remembered that these opinions are merely to the effect that the Prosecutor, as a matter of public policy, should not be required to account in too much detail as to such expenditures. Consequently, the bureau of inspection and supervision of public offices in the examination of the records of the Prosecutor's office as required by law, do not scrutinize the legality of such expenditures or question the judgment of the Prosecutor in the use of such funds, with the same exactness that the expenditures of other offices are supervised, due to the spirit and view of such opinions of the attorney generals. The spirit of the law is that the Prosecutor shall have the utmost freedom in the use of such funds for the purposes authorized by law.

This is a far cry from any theory that the law authorizes such funds to be used by the Prosecutor to pay his own personal expenses, "when he is off on a frolic of his own;" or that he need not account strictly for the use of such funds, where there is any reason to believe that he not only has lied as to the actual use thereof, but that he has expended said funds for his own personal use and gain rather than for the official purposes.

It must be remembered that the indictment charges not only that he did unlawfully and fraudulently embezzle and convert to his own use said money belonging to this county; but supplemented by the bill of particulars, further charges that he falsely and fraudulently pretended and certified that he incurred such expenses of $210.00 in attending a meeting in his official capacity, when in truth and in fact, he well knew he did not so incur said expenses in any official capacity whatever, and did not attend

any such meeting at all; and that he made said false and fraudulent certificate with the sole intention of depriving said county of said money, and he did so receive said money for his own personal use, gain and profit.

To say the least, the filing of a demurrer to such charges is arrogance personified, and an affront to the decency of the citizenship of this county.

It is even asserted that said funds in defendant's possession ceased to be "public money" although entrusted to him for certain public purposes, as above designated.

Sec. 3004 GC, under which the defendant received said money of this county, does not disclose a purpose on the part of the General Assembly to make "booty" of such funds of the county. **State v. Pohlmeyer, 59 Oh St 491, 496.** (Emphasis ours.)

"It is elementary that the public money may be used only for public purposes, never for private gain." **32 O. Jur. Public Officers Sec. 94, p. 954; Kohler v. Powell, 115 Oh St 418, 425.**

The term 'public money' as used in §286 GC, relating to the recovery of public money illegally expended, includes all money received or collected under color of office, whether in accordance with or under authority of any law, ordinance or order, or otherwise;" **32 O. Jur. Public Funds, Sec. 1 p. 715; §286 GC.**

Sec. 12876 GC, on which the indictment is based, provided:

"Whoever, being elected * * * to an office of public trust or profit, * * * embezzles or converts to his own use, anything of value that shall come into his possession by virtue of such office * * *, is guilty of embezzlement, * * *"

The gist of the crime of embezzlement is an intentional conversion by the embezzler to his own use of property entrusted to him. **State v. Urbaytis, 156 Oh St 271.**

Finally, it is even argued by counsel for the defendant, that the office of Prosecuting Attorney is not an office of public trust.

"A prosecuting attorney is a public officer, * * *" **32 O. Jur., Prosecuting Attorneys, Sec. 2, p. 643; 11 O. Jur., Counties, Sec. 31, p. 268; §2909 et seq. GC; State ex Doerfler v. Price, 101 Oh St 50.**

"Where by virtue of law, a person is clothed * * * with independent power to control the property of the public and with public functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office." **11 O. Jur., Counties, Sec. 30, p. 267; State v. Brennan, 49 Oh St 33.**

"6. One elected to public office holds duty to public not to betray his trust." **Fromm v. State, 36 Oh Ap 346,** leave to file appeal refused by Supreme Court, April 23, 1930;

"A public officer is bound to perform the duties of his office, faithfully, to use reasonable skill and diligence, and to act primarily for the benefit of the public. He must perform his official duties with integrity, for he owes a duty to the public not to betray his trust." **32 O. Jur., Public Officers, Sec. 90, p. 950;**

"Public officials, it would seem, should consider themselves rather as trustees than philanthropists, in the appropriation and disbursement of

public funds." **Peters, Dir. of Finance, v. State ex Joehn, 42 Oh Ap 307, 308; 32 O. Jur. Public Officers, Sec. 95. p. 955;**

"It is true, that an officer elected * * * by the people * * *. He is but a trustee for the public;" **Knoup v. Piqua Bank, 1 Oh St 603, 617;**

"A public office is a trust held for the benefit of the public." **Mason v. State ex McCoy, 58 Oh St 30, 55;**

"A public officer is a public servant, whether he be a policeman of a municipality or the president of the United States. His candidacy for the appointment or election, his commission, his oath, in connection with the law under which he serves, and the emoluments of his office constitutes the contract between him and the public which he serves." Per curiam opinion, **Cleveland v. Luttner, 92 Oh St 493, 494.**

"We so often lose sight of the primary purpose of criminal statutes. They are enacted to protect the public by prohibiting crime and punishing criminals. If a man is agent enough to get possession of money for and in the name of his principal, he is also agent enough to be convicted of embezzlement as such agent." Per curiam opinion, **State v. Gross, 91 Oh St 161, 164;**

"If he was officer enough to receive the money, he was officer enough to be punished for embezzling it." **State v. Carter, 67 Oh St 422;**

"The statutory definition of the offense (embezzlement) regards the actual relation of the agent, servant or employe, and not the legality of the mode in which it was created nor the extent of the authority conferred and the rule that one who receives money or any other thing of value in the assumed exercise of authority as agent for another, is estopped thereafter to deny such authority, applies in criminal prosecutions as in civil actions." **State v. Pohlmeyer, supra; Roberts v. State, 45 Oh Ap 65;** petition in error dismissed, **126 Oh St 429.**

"There are two classes of embezzlement statutes, the first class being composed of §12467 et seq. GC, and defining the embezzlement of private funds, and the other class composed of §12373 et seq. GC (including §12376 GC), and defining the embezzlement of public funds."

The basic principles are the same, however. **15 O. Jur., Embezzlement, Sec. 4 p. 602.**

"Where the secretary of a building association procures the issue of its checks in the names of fictitious applicants for loans, and endorses them in the names of the fictitious payees his collection of such checks would estop him from asserting their original invalidity, even if they were invalid, and would amount to embezzlement under §6843 GC." **Livingston et al. v. Fidelity & Deposit Co., 7 O. C. C. (N. S.), 66, affirmed 76 Oh St 253.**

"The testimony tended to show that Breinig as superintendent of Maintenance and Repair of State Highways would submit to his superiors a list of names of supposed laborers with the amount due them, and that the checks would be issued payable to these several laborers for the amounts apparently due them, when as a matter of fact there were no such laborers and consequently no such sums due anyone; that these checks were cashed by Breinig. who kept the proceeds. It is quite possible that these facts would support a charge of obtaining money under false pretenses. But the fact that false pretenses were resorted to in order to get possession of the money would not relieve the accused from a charge of embezzle-

ment. If Breinig endorsed checks payable to non-existent payees and received the money therefrom it was the state's money and even though he used fraud to gain possession of the money it nevertheless came to his possession by virtue of his employment and but for the fact that he was an employee he could not have come into possession of· the money. **It could have been the money of no one else, and regardless of what ruses he adopted to get possession of it, if he converted it to his own use he was thereby guilty of embezzlement."** (Emphasis ours.)

The verdict of embezzlement and the judgment thereon was affirmed. **Breinig v. State, 33 O. L. R. 649, affirmed 124 Oh St 39.**

The Livingston case, supra, in which the secretary of the building association resorted to the cashing of its checks payable to fictitious payees, and the Breinig case, supra, in which he resorted to the padding of the state payroll and the cashing of such checks, to get possession of the funds of the association and the state, would appear to be decisive of the guilt of the defendant Kearns who admits by his demurrer that he resorted to the cashing of a check on the fund of the prosecuting attorney for a fictitious expense account for a trip that he never made.

The indictment is almost identical with the one in the case of State v. Otto No. 20,943 on the dockets of this court, wherein the defendant as city auditor was convicted of embezzlement of public funds under §12,876 GC, where the defendant resorted to use of fraudulent vouchers to obtain money from the city treasury for similar fictitious trips that he never made. Scarlett, J., in the Otto case, supra, gave the following special instruction on request of the jury for further instructions:

"The second question, which also bears on some of the elements of embezzlement, is as follows:

'Does the state have to prove whether defendant has used the money for his own personal use as charged in the indictment?'

"My answer: The state is not required to prove where and how the defendant spent money of the city which came into his hands by virtue of his office. It is necessary, however, for the evidence to convince you beyond a reasonable doubt that the defendant did not in good faith, apply the money in payment of official expenses described in the vouchers upon which the warrants were based, believing in good faith, that he had authority so to do, and that he has exercised dominion and control over the money with the intention of permanently depriving the city of such money without its consent or without proper authority.

"It is not necessary, of course, for the city to trace the money and show how or when he spent it. In reaching your conclusion you will consider all the facts and circumstances surrounding and following the receipt of the money, including the length of time since defendant came into possession of the money. The defendant is not charged with the safekeeping of funds, and if the purpose for which the money was obtained failed, it was his duty to account in a reasonable time. If he failed to do so, you may draw such inferences of conversion to his use rise wrongfully as you believe justified."

Judge Scarlett's instruction was good law then and now, the only difference in the instant case being that Kearns admits by his demurrer that he certified his expenses for a prior trip never taken, while Otto certified

540

for trips in advance which were never made. A jury would have the right to such an inference of conversion as it felt justified, because of an absolute false certificate as to such expenses having already been incurred.

This court in closing, cannot choose more fitting words than those of Judge Gorman of the Hamilton County Common Pleas Court when he said:

"Public office is a public trust and not a sinecure. and he who cannot so treat it and perform his duties, should vacate the office and give way to an honest and capable man who is ready and willing to perform the duties imposed by law upon the official." State ex rel. v. Hamann (1911), 10 N. P. (N. S.) 569,580.

The demurrer to the indictment, supplemented by the bill of particulars, is overruled; and the defendant is directed to enter his plea to said indictment forthwith.